RABB v. PATTERSON.

1. IMMATERIAL ERROR was committed by the Circuit Judge in his statement that a cause had been continued against an executrix by order of court, where, in fact, it had been continued without any order.

2. RENTS—MEASURE OF LIABILITY—BONA FIDE OCCUPANT.—One who goes into peaceable possession of land under a *bona fide* belief that he has title and right to possession, and is afterwards declared by a divided court to have been mistaken in such belief, is accountable to the rightful owner only for rents and profits received and not for rental value; and especially is the executrix of such occupant responsible only for what her testator received, and not for the damages which the law allows against a trespasser.

3. IBID.—One who is wrongfully in possession of land and receives the rents and profits, is liable to the rightful party for all the time that rents were so received by him, and not only for the time since the right of the claimant had been declared.

4. IBID.—RES JUDICATA—INJUNCTION BOND.—The successful defendant in an action brought against her to establish plaintiff's title to a tract of land, is not precluded from claiming rents against such unsuccessful plaintiff by reason of her failure to assert her claim for rents in the former action; nor was she required to proceed under the injunction bond given in such first action, some portions of the rents not being covered by this injunction bond.

5. IBID.—MEASURE OF LIABILITY.—A party in possession of land under *bona fide* belief of right, is responsible to the true owner for rents actually recovered from another, who had collected them from the tenants, but not for so much as were expended in payment of costs under decree of court, in a cause to which the true owner was a party.

6. TRUST—RENTS collected from trust lands are trust funds in the hands of one who had knowledge of the trust. A Circuit decree to the contrary did not operate to release these rents from this trust where the decree was reversed on appeal.

7. IBID.—IBID.—The grantee of a trustee who receives rent from the trust lands, is responsible, and so is his estate after his death, to the *cestui que* trust for the amount so received, notwithstanding the *cestui que* trust had sued her trustee to judgment for this rent.

8. COSTS—APPEAL.—Costs follow the decree in an equity cause unless otherwise ordered, nor will a party be heard in this court to complain that an action was in violation of a restraining injunction, when no such objection was considered on Circuit.

Before GARY, J., Fairfield, September, 1893.

Action by Edwin J. Rabb, as trustee, and Cassandra H. Rabb, against M. Virginia Patterson, as executrix of Giles J. Patterson, and J. A. Brice, assignee, for rents and profits, commenced July 3, 1891. The Circuit decree was as follows:

The complaint in this cause seeks to recover a judgment for the rental value of a certain tract of land during the time the

34—42

same was in the possession of Giles J. Patterson. About the 10th day of December, 1891, while the cause was pending, the defendant, Giles J. Patterson, departed this life, leaving of force a last will and testament, of which his widow, the defendant, M. Virginia Patterson, is the duly qualified executrix. On the 26th day of July, 1893, Judge Witherspoon passed an order continuing said cause in the name of the executrix, the said M. Virginia Patterson.

The facts and circumstances under which the said Giles J. Patterson went into possession of the premises described in the complaint are briefly as follows: On the 1st day of January, 1880, for value, Giles J. Patterson purchased from David R. Flenniken and had assigned to him a certain bond and mortgage, executed by Wade Pickett to said David R. Flenniken, to secure the purchase money of the premises described in the complaint herein, which was conveyed by deed to Wade Pickett by said David R. Flenniken. On the 4th day of February, 1881, Wade Pickett, conceiving that he was unable to pay the amount due upon his mortgage debt, reconveyed by his deed the said tract of land to the said David R. Flenniken in fee simple. On the 5th day of December, 1885, the said David R. Flenniken, being insolvent, conveyed his entire estate, including the tract conveyed to him by Wade Pickett, to the defendant, James A. Brice, for the benefit of the creditors of said Flenniken.

On the 27th day of January, 1887, Giles J. Patterson began an action in the Court of Common Pleas for Fairfield County to foreclose the mortgage assigned to him by Flenniken against James A. Brice as sole defendant. On the 13th of June, 1887, judgment of foreclosure was rendered in favor of said Giles J. Patterson, and the land embraced in his mortgage was ordered to be sold by the clerk of the court for Fairfield County on the first Monday of October, 1887, at which sale Giles J. Pattersen became the purchaser for the sum of $550. At the sale notice was given that Mrs. Cassandra Rabb was the owner of the land. A deed of the premises was executed by the clerk of court to Giles J. Patterson, and he immediately went into possession of said premises. During this time Cassandra H. Rabb had a

suit pending in the Supreme Court, on appeal to set aside
Flenniken's title, on the ground of fraud, &c.   On the 20th of
February, 1890, the judgment of the Supreme Court was remit-
ted to the lower court, wherein it was decreed that Flenniken
was not the owner of the premises covered by Patterson's mort-
gage, and further ordering that Flenniken should hold the lands
as a trustee, &c.   See 29 S. C., 278, and also 32 S. C., 194.

In the meanwhile Giles J. Patterson had brought suit against
the said Cassandra H. Rabb for the purpose of having himself
declared an innocent purchaser of the premises, and to quiet
his title, &c.   See *Patterson* v. *Rabb*, 38 S. C., 138.   In that case
the Supreme Court held that Flenniken (from whom Patterson
obtained his mortgage) was not an innocent mortgagee without
notice, but actually participated in a fraud by which he obtained
his deed, and ordered that the land be delivered to Edwin J.
Rabb as trustee, &c., and further ordered that the deed from
the clerk of court be cancelled, intimating that Patterson had
no higher equity than Flenniken, from whom he purchased
his mortgage.

As was said above, the object of the present suit is to recover
rents and profits during the time the said premises were in the
possession of Giles J. Patterson.   This suit is defended by the
executrix of Giles J. Patterson mainly on the ground that her
testator having gone into possession of the tract of land under
the order of court (in the foreclosure proceedings), he should
not be regarded as a trespasser; and if liable at all, she should
be charged for rents actually received, and not for the rental
value of the land.

It will be seen from the judgment of the Supreme Court in
the case of *Patterson* v. *Rabb*, 38 S. C., 138, that "Flenniken,
the mortgagee, was not only cognizant of the breach of trust,
but participated largely therein, so that it was impossible for
him to be considered an innocent mortgagee without notice."
The court further held that Patterson, the assignee of Flenni-
ken, took his assignment of the mortgage subject to all the
infirmities in and against his assignor (Flenniken).   So the
possession of Patterson must be tested by the same principle of
law as would apply to his assignor, Flenniken.   Viewing his

status in this light, I cannot but conclude that Patterson entered wrongfully, and he was there simply as a trespasser.

Having entered and held possession as a trespasser, what are his liabilities as regards rents? In the case of *Maner* v. *Wilson*, 16 S. C., 469, the court held, that "parties taking wrongful possession of lands of another are liable to account for the rental value and not simply for the rents and profits received." In the case just quoted, the defendants took possession and held it, and rented it as owners under a paper title, in form a deed, but which was afterwards declared a mortgage. It was conceded that the land did not belong to the defendants, and they must account for rents, but the contest was as to the amount they should be required to pay. The plaintiffs contended that the defendants were chargeable with such rent as they could have received if they had offered the plantation for rent on fair competition in open market, and the defendants insisted that they were only liable for the actual rents and profits received while they had possession. The Circuit Judge held that the view of the plaintiffs (rental value) was the correct one, and the Supreme Court sustained the Circuit Judge. In the case of *Jones* v. *Massey*, 14 S. C., 292, the court say: "If James R. Massey had ousted the other cotenants, and kept them out by force (which is not alleged), then he would have been liable as a trespasser for the rental value beyond his share."

I, therefore, conclude, as matter of law, that the defendant is chargeable with rental value of the premises.

What, then, is the rental value of the plantation? Upon this point the testimony is not uniform, nor is it in harmony. Moses Clark testified for the plaintiff that he thought the place was worth six bales of lint cotton, weighing 450 pounds. W. M. Harden thought it worth five or six bales, weight not stated. Silas Ruff thought it worth six bales, weight not stated. It will be readily seen that this proof is indefinite, and I confess I have had some hesitation at fixing a valuation of said premises. I am somewhat inclined to the opinion that Mr. Patterson, while he was in possession of it, rented it at about its true value. The place was sodded with wire grass, and there seems to have been no great demand for it. Mr. Patterson seems to

have been diligent in trying to rent it for its full value; he retained a very competent business man in the county (Mr. Douglass) to rent it for him; and in the absence of any evidence to the contrary, I think he rented it for almost its full value. It appears from the evidence that he did not collect the full amount for which he rented it, but I do not think this should exempt him from liability for its full value; and especially so, since the law gives him a lien on the crops raised.

Taking all of the facts into consideration, I find as a fact that the rental value of the place during the time it was occupied by Giles J. Patterson was $160 per annum, and that his executrix is liable for the years covering the period the said Giles J. Patterson was in the possession of the same, a period of five years, and aggregating the sum of $800. It appears that while Mr. Patterson was in possession he paid the taxes on said place, aggregating the sum of $64.17; this amount should be deducted from the amount adjudged to be due. In addition to this, it appears that Giles J. Patterson received from the defendant, James A. Brice, the sum of $201, accrued rent while Brice was in possession under an assignment from Flenniken above alluded to. This sum was paid to Mr. Patterson at his instance, and under an order of court, obtained by Mr. Patterson. This was trust funds, and properly belonged to the plaintiffs. The trust deed was of record, and I must conclude that Mr. Patterson received the fund with a knowledge of the trust attached to it. His executrix is also chargeable with this amount, in addition to the amount above adjudged to be due. As was said above, the defendant, Brice, having paid this fund under order of court and at the instance of Mr. Patterson, is absolved from liability. The complaint is dismissed as to him. It is further ordered, that plaintiffs have leave to enter up judgment to enforce this decree, and to apply at the foot of this order for any additional order to carry out the same.

*Messrs. A. S. & W. D. Douglass,* for appellant.

*Messrs. Ragsdale & Ragsdale* and *McDonald, Douglass & Obear,* contra.

December 11, 1894. The opinion of the court was delivered by

MR. JUSTICE POPE. This appeal presents some additional phases in a controversy that has been conducted in our courts since the year 1884. Its history may be traced in 29 S. C., 278, 32 *Id.*, 194, and 38 *Id.*, 138, and having been so fully ventilated already, will require but little further statement. Some reference to the facts ought, however, to be made, to make the present issue intelligible.

A tract of land lying in Fairfield County, in this State, was conveyed to a trustee in 1867. In 1877, that trustee, in flagrant violation of his trust, conveyed the land to one Flenniken, who was fully cognizant of that fact. Flenniken sold the land to an unlettered colored man, taking his bond and mortgage to secure the purchase money. This bond and mortgage were assigned to Giles J. Patterson for value. After the assignment thereof to said Patterson, the colored man reconveyed the land to Flenniken. Action was brought by the *cestui que* trust named in the trust deed against Flenniken to uproot the conveyance to him of the trust lands in 1884, and a notice of *lis pendens* was then filed. In 1885, said Flenniken conveyed his entire estate to James A. Brice, as assignee, for the benefit of his creditors. Giles J. Patterson brought an action against James A. Brice, as assignee, and to foreclose his mortgage, and refused to make Cassandra H. Rabb a party to his suit; and this action of Patterson ripened into a judgment in June, 1887, including therein a requirement that James A. Brice, as assignee, pay to said Patterson $201, which Brice, as assignee, had realized from rents of the trust lands. Patterson purchased the lands under his judgment, and went into possession thereof in 1888. The Supreme Court filed its judgment in favor of Rabb and against Flenniken in 1890. In order to retain his possession of the land as the owner thereof, Patterson began his action in 1890, which terminated adversely to all his claims in 1893.

However, in 1891, Mrs. Rabb and her new trustee began her action against Patterson to collect the $201, which had been collected by him from Brice for the rents in 1886 and 1887, and also to have him pay the five years' rent which had accrued while he was in possession, and this is the action we are now

called upon to consider. It should be stated that Patterson having died in December, 1891, the action was continued against his personal representative, Mrs. Patterson, as his executrix. She vigorously denied any responsibility therefor on several grounds. All the issues came on to be tried before his honor, Judge Ernest Gary, who, after all the evidence, oral and documentary, had been considered by him, filed his decree in January, 1894, wherein he adjudged that the plaintiffs recover of the defendant, Mrs. Patterson, as executrix, $800 for rents and profits during the five years the land was in Giles J. Patterson's control, and an additional sum of $201, received by him of Brice, as assignee, for rent, but the complaint was dismissed as to Brice, as assignee. From this decree Mrs. Patterson has appealed upon ten grounds, which we will consider in their order.

"1st. Because his honor erred in holding that on the 26th day of July, 1893, Judge Witherspoon passed an order continuing said cause in the name of the executrix, the said M. Virginia Patterson." Strict accuracy in stating the result of the order of Judge Witherspoon was not observed by Judge Gary in his decree, for really Judge Witherspoon declined to pass the order referred to, on the ground that, under a decision of court (*Parnell* v. *Maner*, 16 S. C., 348), the plaintiffs had the right to continue the cause against the executrix without any order therefor from the Circuit Court. However, this inadvertency on the part of Judge Gary is immaterial, and needs no further attention.

As we will discuss the principles of the law governing the 2d, 3d, and 4th exceptions, we will consider them in a group. They are as follows: "2d. Because his honor erred in finding and holding that Giles J. Patterson entered into and was in possession of the premises described in the complaint in this action simply as a trespasser. 3d. Because his honor erred in his conclusion of law that the defendant, M. Virginia Patterson, as the executrix of the will of said Giles J. Patterson, deceased, is chargeable with the rental value of the said premises for the years covering the period the said Giles J. Patterson was in possession of the same, and in directing judgment to be entered against said defendant, as executrix as

aforesaid, for the sum of $800, after deducting therefrom $64.17, the amount of taxes paid by Giles J. Patterson on said premises. 4th. Because his honor erred in not holding that the said defendant, as executrix as aforesaid, if liable at all in this action, can only be held liable for the rents and profits actually received, which were shown by the testimony to amount to $502.18, out of which taxes assessed on said premises were paid amounting to $64.17.''

It seems to us that the Circuit Judge erred in holding that the appellant's testator went into possession of the land in question as a bald trespasser; on the contrary, we think he took possession under a *bona fide* claim of right as authorized by a judgment of the court. The fact that the court has eventually held that the claim of the testator was unfounded, cannot affect the character of his possession. There is no doubt of the fact that Mr. Patterson went into possession as the purchaser at a sale made under a judgment of foreclosure obtained in an action for the foreclosure of a mortgage brought against a person who then held the *legal* title to the mortgaged premises; and there is little doubt that he then supposed, and had reason to suppose, that he had acquired a good title to the premises, for the proceedings show that two of the Circuit Judges and one of the Justices of this court were manifestly of that opinion. We think, therefore, that even if Mr. Patterson were now living, he could only be required to account for the rents and profits actually received by him, and not for the "rental value" of the premises. As was said by Johnson, Ch., in his Circuit decree in *Johnson* v. *Lewis*, 2 Strob. Eq., on page 160, approved afterwards by the Court of Appeals: "The rule is that if one comes tortiously into possession of an estate, he ought not to be spared, and ought to be charged to the extent of what it was capable of producing; but if he enter rightfully, and can show what the actual income was, that will determine his liability * * * The same principle ought, I think, to apply when the party in possession believes that the right of property was in himself, and has been thrown off his guard by the belief that he was not liable to account.'' This view was fully sustained

by the cases of *Jones* v. *Massey*, 14 S. C., 292; *Thomson* v. *Peake*, 38 *Id.*, 440, and *Bradford* v. *Buchanan*, 39 *Id.*, 239.'

It seems to us that the point of distinction lies in the fact that one who goes into possession of the land of another as a bald trespasser, or, as some of the cases express it, acquires the possession by force or fraud, he is entitled to no consideration at the hands of the court, and the strictest rule of accountability is, therefore, applied to him; but when one goes into possession under *bona fide* claim of right, though it may eventually prove to be unfounded, he is not to be punished for his honest mistake, but is only required to account for such rents and profits as he has actually received, and not for the "rental value" of the premises. To show that one who goes into possession under an honest, though mistaken, belief of right, is not to be treated as a trespasser when called upon to account for rents and profits, see what is said by Johnson, Ch., in his Circuit decree in *Rainsford* v. *Rainsford*, McMull. Eq., at page 336, and by Harper, Ch., in delivering the opinion of the Court of Appeals in *Ridelhoover* v. *Kinard*, 1 Hill Ch., at page 381. The cases cited by counsel for respondent are not in conflict with this view; for in *Boyce* v. *Boyce*, 6 Rich. Eq., 302, the defendant, Starr, not only went into possession as a bald trespasser, but he also acquired possession by an open defiance of an order of injunction made in a case to which he had made himself a party by proving his claim. In *Kirkpatrick* v. *Atkinson*, 4 S. C., 126, the defendant, Atkinson, acquired possession by fraud, and in *Maner* v. *Wilson*, 16 S. C., 469, the defendants went into possession under a paper which, though in the form of an absolute deed, they knew was intended as a mortgage.

But even if Giles J. Patterson could be regarded as a trespasser in taking possession of this land (and we have just held that such was not the case), it is very clear that his executrix cannot be charged with anything more than the amount actually received, the amount that actually enured to the benefit of her testator's estate. The foundation of plaintiffs' claim, their cause of action, so to speak, was the alleged trespass of the testator, and under the maxim, *actio personalis moritur cum persona*, the plaintiffs' cause of action against the testator would not

survive against his executrix except to the extent of enabling plaintiffs to recover against appellant whatever amount may have enured to the benefit of her testator's estate from his alleged tort. See *Chalk* v. *McAlily*, 10 Rich., 92; *Chaplin* v. *Barrett*, 12 *Id.*, 284; *Huff* v. *Watkins*, 20 S. C., 477. The act of 1892 (21 Stat., 18, approved 20th December, 1892,) cannot apply to this case, and has not, therefore, been considered. The principles here announced dispose of the second, third, and fourth exceptions.

The fifth exception is in these words: "Because his honor erred in not holding and adjudging that, under the circumstances of this case, the liability of Giles J. Patterson or his executrix to account for the rents and profits of said premises should be restricted to the 1st of April, 1890, when the deed of conveyance by David R. Flenniken to the plaintiff, Edwin J. Rabb, as trustee, was made under the decree in the case of Cassandra H. Rabb v. D. R. Flenniken, or to the 12th July, 1890, when the plaintiffs were enjoined from taking possession of said premises under order in the case of Giles J. Patterson v. Cassandra H. Rabb *et al.*" We are not impressed by this exception. Giles J. Patterson took possession of these lands early in 1888. He and his estate have had the rents and profits since that date. Under the decision of this court in *Patterson* v. *Rabb*, 38 S. C., it has been determined that this property was not his on 1st January, 1888, nor at any moment after that time; on the contrary, this court decided that this was the property of the plaintiffs all that time. Therefore, to excuse him or his estate from paying rent from 1st January, 1888, to 1st April, 1890, or 12th July, 1890, would be to take the property of Mrs. Rabb and give it to the estate of Patterson. We have been pointed to no good reason for such course on our part. In our judgment, it would be against equity and good conscience. Let this exception be overruled.

"6th. Because his honor erred in not holding and adjudging that the plaintiffs by their neglect to demand and obtain judgment for rents and profits in the case of Giles J. Patterson (M. V. Patterson, as trustee for herself and children, subsequently substituted as plaintiffs,) v. Cassander H.

Rabb *et al.*, and by their failure to avail themselves of the reference or remedy in that action provided by section 243 of the Code of Procedure, are precluded from obtaining a decree for rents and profits in this action." It must be remembered that the action of Patterson *v*. Rabb was that brought by Patterson himself for his own purposes—namely, the upholding of his title to the trust lands—and this was the issue Mrs. Rabb was brought to take part in settling. When A sues B to recover a specific tract of land or a specific sum of money, B may content himself with defending himself against the claim of A as set up in his complaint—he need go no further, although he may go further if he chooses. Not so, however, with A; he must exhaust himself in regard to the specific tract of land or specific sum of money sued for—afterwards, he cannot make as a cause of action against B any claim he had as to the land or to the money.

So far as section 243 is concerned, it may be remarked that it does provide for a bond to indemnify the opposite party from damages, and that this remedy may be had in the case to ascertain damages, "by a reference or otherwise;" but then this bond only operated from 12th July, 1890; and if it was permissible to announce that it covered rents and profits as well as other items of "damages," what would become of the rents and profits for two and a half years before that date? and also what would become of the $201 received from James A. Brice as assignee in 1887? We think it better to say that the term damages may cover rents and profits in some cases, but it must be evident that to so hold in this action would be to require the plaintiffs to split up their claims for rent into several actions. Besides, it must be remembered that such "damages," under the injunction bond, may not only be obtained under "reference" proceedings, but the same section of the Code provides that it may be done "otherwise" than under "reference." To pursue the subject further is unnecessary—it is untenable.

The seventh exception is as follows: "Because his honor erred in holding that the said defendant, as executrix as aforesaid, is also chargeable with the sum of $201, which was

applied in part to pay costs and balance ($185.63) paid to Giles J. Patterson under order of the court in the case of Giles J. Patterson v. James A. Brice, as assignee of the estate of David R. Flenniken, and in directing the entry of judgment therefor in favor of plaintiffs against this defendant, as executrix as aforesaid, when no appeal was taken from said order, and at the time of such payment there was no valid existing order impounding the rents in the hands of Brice as assignee." The decree of the Circuit Judge, it seems to us, contains a slight error in the amount charged against the appellant, on account of the money received from Brice, as assignee, by Patterson, and which was realized from the rents of the premises in question.    While there is no doubt that the money in the hands of Brice, as assignee, arising from that source, was realized from the lands adjudged to belong to the plaintiffs, yet neither Patterson nor his executrix can be charged with anything more than they actually received, and the undisputed testimony is that Patterson received only the sum of $185.63, and the balance of the $201 was applied to the costs incurred by Brice, as assignee, on the action for foreclosure.    Brice was a party to this action, and the plaintiffs did not except to that part of the decree which dismissed the action as to him.    All the plaintiffs can recover against Mrs. Patterson as executrix, on account of this $201, is the sum of $185.63.

"8th. Because his honor erred in holding and concluding that the sum of money paid by James A. Brice to Giles J. Patterson under the order of court was a trust fund belonging to the plaintiffs; and that Giles J. Patterson received the fund with the knowledge of the trust attached to it, when Judge Wallace by his decree, which was then of force, had dismissed the complaint in the case of Cassandra H. Rabb v. D. R. Flenniken."    We do not see how these funds were not trust funds.    They came as rent from the trust lands, and Cassandra H. Rabb, under the terms of the trust deed, was to receive such rents from her trustee.    Certainly Mr. Patterson knew all about these matters.    As to the decree of Judge Wallace, dismissing the complaint, operating to release the trust character from those funds, we cannot admit such a doctrine,

when it is recalled that an appeal was taken from such decree, and was sustained by this court. The exception is not tenable.

"9th. Because his honor erred in not holding that the plaintiff, Cassandra H. Rabb, having elected to take a personal judgment for rents and profits, embracing the years 1886 and 1887, against David R. Flenniken in the case of Cassandra H. Rabb v. David R. Flenniken, to which action neither James A. Brice, as assignee, nor Giles J. Patterson was made a party, the claim of rents and profits for said years was merged in said judgment against David R. Flenniken, and there is no privity between the plaintiffs and Giles J. Patterson, or his executrix, or equity, which would entitle the plaintiffs in this action to recover the said sum of $201 from the defendant, M. Virginia Patterson, as executrix as aforesaid." We confess ourselves unable to see what connection Mrs. Patterson, as executrix of Giles J. Patterson, has with the proceeding of the plaintiffs against David R. Flenniken, and, therefore, we cannot perceive the pertinency of any inquiry by us into what entered into that judgment. If it is true that Giles J. Patterson received $201 of the trust estate belonging to the plaintiffs here, and that he had no legal right to any part of that fund, it makes no difference what other people have been unsuccessfully sued to try and recover this fund. To enable the present plaintiffs to recover this fund from the estate of Giles J. Patterson, deceased, no privity need exist. It is the old case of a trust fund being taken possession of by one not entitled to hold it; when the trustee, or *cestui que* trust, who is entitled to hold it, comes and sues for it, he is entitled to a judgment for its recovery. Let the exception be overruled.

"10th. Because his honor erred in not adjudging that the plaintiffs, having commenced this action in violation of the order of an injunction made in case of Giles J. Patterson v. Cassandra H. Rabb *et al.*, which restrained them, their attorneys, their agents, and servants, from collecting, receiving or intermeddling with the rents and profits of the premises described in the complaint, should not be allowed costs against the defendant." We are inclined to think this point as now made comes too late. Certainly the Circuit Judge

made no express order on the subject of costs. We will not undertake to pass upon a question of this character raised for the first time in this court. At all events, costs follow the result except in equity cases, when the Circuit Judge may order differently if he sees proper. It seems to us that this question, at best, comes too late. If plaintiffs were enjoined from suing, that should have been so adjudged. Not having been so adjudged, this court will assume that all things were rightly done in the court below, no showing to the contrary having been made.

It follows from our preceding observations that the Circuit Court decree must be modified by having that decree fix the liability of Mrs. Patterson, as executrix, for the sum of $502.18, as the rents for which she, as said executrix, must pay, in lieu of $800, less the amount paid for taxes as ascertained by the decree; and that she, as said executrix, must pay the sum of $185.63 on account of the amount received by Giles J. Patterson from James A. Brice, as assignee, instead of $201; but that in all other respects the said decree shall be affirmed.

It is the judgment of this court, that the judgment of the Circuit Court be modified as herein indicated, and that in all other respects such judgment be affirmed.